# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | | |
|---|---|---|
| WESTERN SIZZLIN CORP., | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | Civil Action No. |
| | ) | |
| GEORGIA SERVICE SYSTEM, | ) | TRIAL BY JURY DEMANDED |
| LLC, JOHNNY D. MILLER, D&S | ) | |
| SERVICE SYSTEMS, LLC, DION | ) | |
| JOHNSTON, AND SARAH | ) | |
| JOHNSTON, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## VERIFIED COMPLAINT

Western Sizzlin' Corporation ("Western Sizzlin") brings this

Complaint for injunctive relief, monetary damages, and all other

appropriate remedies against Georgia Service System, LLC ("GSS"),

Johnny D. Miller ("Miller"), D&S Service Systems, LLC ("D&S"), Dion

Johnston, and Sarah Johnston ("Defendants").

## Nature of the Action

1.     After doing business as a Western Sizzlin franchise for decades,

the Defendants acting in concert removed the "Western Sizzlin" sign where

it stood and put the name of another steak buffet in its place. They did so

despite clear contractual obligations preventing that very action and with full knowledge of the business garnered from the goodwill, information, methods, and processes perfected by Western Sizzlin and learned by the former franchisee GSS.

2.      Western Sizzlin seeks, among other things, a temporary restraining order, preliminary and permanent injunction (i) enjoining Defendants' wrongful and unlawful use of Western Sizzlin's protected trademarks and trade dress; (ii) enforcing the post-termination obligations set forth in the Franchise Agreement entered into by and between GSS and Western Sizzlin; (iii) prohibiting Defendants' continued unjust enrichment; and (iv) enjoining Defendants' continued misappropriation and use of Western Sizzlin's trade secrets. Western Sizzlin also seeks damages for Defendants' infringing conduct and for Defendants GSS and Miller's breaches of the Franchise Agreement, as well as the attorneys' fees and costs Western Sizzlin has incurred and will incur in prosecuting this action, as provided by statute and the Franchise Agreement. Further, Western Sizzlin seeks damages in the amount of what GSS and Miller received following the transfer of GSS' interests in the Franchise Agreement to D&S and in the amount of distributions made from D&S to Dion Johnston and

Sarah Johnson from D&S' operation of Yellowstone Steak & Buffet as provided for by law for Defendants' unjust enrichment and misappropriation of Western Sizzlin's trade secrets, as provided by the Georgia Trade Secrets Act ("GTSA").

3.     Western Sizzlin is a Delaware corporation with its principal place of business in Roanoke, Virginia. Western Sizzlin is engaged in the business of operating, and granting franchises to qualified persons to operate, Western Sizzlin restaurants using Western Sizzlin's distinctive business format, system of operations, and proprietary names, marks, and trade dress.

4.     Upon information and belief, GSS is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business in Georgia. GSS is a former franchisee of Western Sizzlin.

5.     Upon information and belief, Miller is a resident and citizen of the State of Georgia. Miller is the guarantor of GSS under a Personal Guaranty that Miller entered into with Western Sizzlin.

6.      Upon information and belief, D&S is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business in Georgia.

7.      Upon information and belief, Dion Johnston is a resident and citizen of the State of Georgia.

8.      Upon information and belief, Dion Johnston is a member of D&S and the son-in-law of Miller.

9.      Upon information and belief, Sarah Johnston is a resident and citizen of the State of Georgia.

10.     Upon information and belief, Sarah Johnston is a member of D&S, the daughter of Miller, and was an employee of Western Sizzlin's Dalton location while it was an authorized franchisee.

## Jurisdiction and Venue

11.     This Court has jurisdiction over the subject matter of this action under 15 U.S.C. §§ 1116 and 1121, and under 28 U.S.C. §§ 1331, 1337, and 1338, and because this case arises under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq*. This Court is also vested with jurisdiction over the subject matter of this dispute through diversity of citizenship, 28 U.S.C. § 1332, because Western Sizzlin is a citizen of a different state than

Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

12.　This Court has supplemental jurisdiction over the state law claims in this Complaint under 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

13.　Defendants are subject to personal jurisdiction within the Northern District of Georgia because they either reside within this district or operate their principal places of business within this district.

14.　Venue is proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in Georgia.

**Facts Entitling Western Sizzlin To Relief**

15.　Founded in 1962, Western Sizzlin is a national franchise chain of retail buffet restaurants and family steakhouses. Known for its unique process of grilling and seasoning steaks with proprietary recipes and in a western-style theme, Western Sizzlin has established a reputation of providing quality meals at exceptional value to families everywhere.

16.     To operate attractive, well-maintained restaurants in high-traffic locations, Western Sizzlin offers three different business models, permitting franchisees to select models that fit their unique personal and business goals.

17.     Each franchisee, regardless of model, is offered initial training, site and design assistance to get the location up and running, as well as ongoing marketing, purchasing, operational, and management support.

18.     Western Sizzlin has developed, and is the sole and exclusive owner of, a distinctive and uniform system ("Western Sizzlin System") relating to the development, operation, and maintenance of Western Sizzlin restaurants. *See* Ex. A at Preamble. Western Sizzlin restaurants feature, among other things, steak and related good products for on-premises consumption.

### A.     Western Sizzlin's Trademarks

19.     To identify the source, origin and sponsorship of Western Sizzlin restaurants and the products and services they offer, and to distinguish those restaurants, products and services from those established, made, offered and sold by others, Western Sizzlin has extensively used certain trademarks, service marks, trade names, logos, and emblems and

indicia of origin, including but not limited to, the following federally

registered trademarks:

| Trademark | Reg. or App. No. | Reg. Date | Goods and Services |
|---|---|---|---|
| <br><br>WESTERN SIZZLIN STEAK & MORE RESTAURANT | 1584119 | Feb. 20, 1990 | Cl. 42: restaurant services |
| <br>WESTERN SIZZLIN STEAK HOUSE | 1362680 | Sep. 24, 1985 | Cl. 42: restaurant services |
| WESTERN SIZZLIN STEAK HOUSE | 1360991 | Sep. 17, 1985 | Cl. 42: restaurant services |
| WESTERN SIZZLIN | 1362691 | Sep. 24, 1985 | Cl. 42: restaurant services |
| GOLD DUST | 2829559 | Apr. 6, 2004 | Cl. 30: seasoning for meat |
| WESTERN SIZZLIN WOOD GRILL BUFFET | 2355500 | June 6, 2000 | Cl. 42: restaurant services |
| WESTERN SIZZLIN EXPRESS | 5167735 | Mar. 21, 2017 | Cl. 43: restaurant services |
| FLAMEKIST | 1076712 | Nov. 1, 1977 | Cl. 42: restaurant services |

| Trademark | Reg. or App. No. | Reg. Date | Goods and Services |
|---|---|---|---|
| | | | involving the preparation of meat dishes |
|  WESTERN SIZZLIN'S WOOD GRILL BUFFET | 3239258 | May 8, 2007 | Cl. 42: restaurant services |
| SIZZLIN | 1049143 | Sept. 28, 1976 | Cl. 29: cooked steak dishes for consumption on or off the premises |
|  WESTERN SIZZLIN STEAK HOUSE | 1126269 | Oct. 23, 1979 | Cl. 42: restaurant services |

20.    Western Sizzlin also owns common law rights in connection with the following trademarks used in connection with steaks: ROUND-UP, WRANGLER, SLIM, MAVERICK, GUN SMOKE, SIX SHOOTER, 12 GAUGE, STAGE COACH, TRAILBLAZER, WAGON TRAIN, DUDE, HOSS, MUSTANG, BIGHOSS, GOLD NUGGET, MARSHALL, TEX, TEXEESE, TEXEECON, BIG TEX, RANGER, PIONEER:



21. Collectively, the trademarks listed in the preceding paragraphs are referred to as the Western Sizzlin Marks.

**B.    Western Sizzlin's Trade Dress**

22. In addition to the Western Sizzlin Marks, Western Sizzlin has developed a trade dress comprising a particular layout and design of its restaurants, which is immediately identifiable and serves to associate the source of its restaurant services and products with Western Sizzlin and its brand.

23.     For example, some ways Western Sizzlin and its franchisees present and identify themselves to the consuming public includes, but is not limited to:

       a.  A tall tower façade;

       b.  A tall pole sign;

       c.  A metal green tin roof;

       d.  Awnings on the windows;

       e.  Wooden furniture;

       f.  Scatter food bars; and

       g.  A Western theme.

24.     The features and characteristics articulated above, as well as other elements, independently and in combination contribute to form Western Sizzlin's trade dress.

25.     Western Sizzlin has been identified by its trade dress since at least 1962.

26.     Western Sizzlin's trade dress is non-functional.

27.     Western Sizzlin's trade dress and the components forming the trade dress are not essential to the function of its restaurant services or the

products offered therein, Western Sizzlin markets and provides in interstate commerce.

28.    Western Sizzlin diligently oversees and takes efforts to protect its trademarks and trade dress, and through litigation and cease and desist letters has been successful in stopping infringements.

29.    Western Sizzlin's trade dress is unique, arbitrary, non-functional, and inherently distinctive. The inherent distinctiveness of Western Sizzlin's trade dress is used and understood to identify Western Sizzlin's brand, and to distinguish Western Sizzlin's restaurants from all others.

30.    Western Sizzlin has invested significant resources and effort to develop and foster the reputation, recognition, and goodwill associated with Western Sizzlin restaurant services and products.

31.    Western Sizzlin has continuously used the Western Sizzlin Marks and trade dress in interstate commerce in connection with the promotion, operation, and franchising of Western Sizzlin restaurants and the promotion and sale of the products and services they offer throughout the United States, including the State of Georgia, since their dates of registration and first uses in commerce.

32.     By virtue of Western Sizzlin's long-standing and continuous use of the Western Sizzlin Marks, Western Sizzlin owns valid and enforceable trademark and service mark rights in and to the Western Sizzlin Marks.

33.     By virtue of Western Sizzlin's long standing and continuous use of the Western Sizzlin Marks registered above, Western Sizzlin's registrations are incontestable.

34.     By virtue of Western Sizzlin's long-standing and continuous use of the Western Sizzlin trade dress, Western Sizzlin owns valid and enforceable trade dress rights in and to the Western Sizzlin trade dress.

35.     Western Sizzlin has the exclusive right to use and license the Western Sizzlin Marks and trade dress and derivations thereof, as well as the distinctive Western Sizzlin System with which franchisees offer Western Sizzlin products and services to the public under the Western Sizzlin Marks and trade dress.

36.     Under the Franchise Agreements entered into by and between Western Sizzlin and its authorized and approved franchisees, Western Sizzlin grants franchises to qualified persons to own and operate Western Sizzlin restaurants using the Western Sizzlin Marks, trade dress, and the

Western Sizzlin System but only in such manner and at such locations as are expressly authorized by Western Sizzlin.

37.     Western Sizzlin and its franchisees use the Western Sizzlin Marks and trade dress as the marks and trade identity by which the products and services offered by Western Sizzlin and its franchisees are distinguished from other restaurants and the products and services made and sold by them.

38.     Western Sizzlin and its authorized franchisees have extensively advertised and promoted Western Sizzlin Marks and trade dress and the products and services they offer under the Western Sizzlin Marks and trade dress throughout certain portions of the United States and through various media. As a result of such efforts and the considerable money spent in connection therewith, the products and services offered by Western Sizzlin and its franchisees under the Western Sizzlin Marks and trade dress have met with widespread public approval and have established demand and goodwill among consumers throughout certain portions of the United States, including the State of Georgia.

### C. Western Sizzlin's Written Agreements with GSS and Miller

39.     On or about December 15, 1994, Western Sizzlin entered into a 20-year written Franchise Agreement with David F. Burris, Sr. pursuant to which Western Sizzlin granted Burris a franchise to operate a Western Sizzlin restaurant in Dalton, Georgia and a license to use the Western Sizzlin System, the Western Sizzlin Marks, the Western Sizzlin trade dress, and Western Sizzlin's other forms of intellectual property in connection therewith, all as fully set forth in the Franchise Agreement. A true and correct copy of the Franchise Agreement is attached and incorporated as Exhibit A.

40.     On or about April 1, 1999, David F. Burris, Sr. transferred, conveyed, and assigned 100% of his rights, title and interest in the Franchise Agreement (and the assets of the Franchise Location) to Miller in an Agreement and Consent to Transfer. *See* Ex. B.

41.     On or about December 27, 1999, Miller executed a Personal Guaranty with Western Sizzlin, in which Miller bound himself as the individual guarantor of GSS, the sole named franchisee. *See* Ex. C.

42.     Under Section 2.3(a) of the Franchise Agreement, GSS was obliged to purchase specific copies of Western Sizzlin's "specifications for

the design and layout of the Restaurant and required building, fixtures, equipment, furnishings, décor and signs." Ex. A § 2.3(a).

43.     GSS agreed to "maintain the condition and appearance of the Restaurant" to Western Sizzlin's standards, including any renovations. *Id.* § 2.3(e).

44.     GSS also agreed to pay Western Sizzlin a "continuing royalty . . . equal to two percent (2%) of [franchisee's] Gross Sales." *Id.* § 4.2(a).

45.     GSS acknowledged that it had no "right, title or interest" in any Western Sizzlin trademarks beyond the nonexclusive license granted through the Franchise Agreement and agreed that no other "trademark, service mark, trade name, insignia, or logotype of any other person, firm, or corporation in connection with the operation of the Franchised Business" would be displayed without Western Sizzlin's express consent. *Id.* §§ 5.1, 5.4.

46.     GSS also agreed that "[u]pon expiration or termination of this Agreement, [Western Sizzlin] may, if [GSS] do[es] not do so, execute in [GSS'] name and on [GSS'] behalf, any and all documents necessary in [Western Sizzlin's] judgment to end and cause the discontinuance of [GSS']

use of the Trademarks, and [Western Sizzlin is] hereby irrevocably

appointed and designated as [GSS'] attorney-in-fact so to do." *Id.* § 5.2(b).

47.    Further, GSS agreed that it "shall not display the trademark,

service mark, trade name, insignia or logotype of any other person, firm or

corporation in connection with the operation of the Franchised Business

without the express prior written consent of [Western Sizzlin], which may

be withheld in its sole subjective discretion." *Id.* § 5.5.

48.    GSS agreed:

> that the Trademarks are [Western Sizzlin's] exclusive property
> and [GSS] now assert[s] no claim and will hereafter assert no
> claim to any goodwill, reputation, or ownership thereof by
> virtue of [GSS'] licensed and/or franchised use thereof, or
> otherwise. [GSS] agree[s] that [GSS] will not do or permit any act
> to be done in derogation of any of [Western Sizzlin's] rights in
> connection with the same, either during the Term of this
> Agreement or thereafter, and that [GSS] will use the Trademarks
> only for the uses and in the manner licensed and/or franchised
> hereunder.

*Id.* § 5.8.

49.    GSS agreed that it "will not, during or after the Term of this

Agreement, in any way dispute or impugn the validity of the Trademarks

licensed hereunder, or [Western Sizzlin's] rights thereto, or the rights of

other franchisees of [Western Sizzlin] to use the same, both during the Term of this Agreement and thereafter." *Id.* § 5.9.

50.    As part of the Franchise Agreement, GSS agreed to "use, offer and/or promote, and maintain in stock at the Restaurant . . . certain proprietary spice mixes, seasonings, flavorings and marinades which are manufactured in accordance with [Western Sizzlin's] proprietary recipes, specifications and/or formulas ("Proprietary Products"). *Id.* § 7.1(a).

51.    Further, GSS agreed to "operate the Franchised Business in strict compliance with a standard procedures, policies, rules and regulations established as incorporated in [Western Sizzlin's] operations manual(s)." *Id.* § 7.3(a). According to the same section:

> The subject matter of the Operations Manual may include, but shall not be limited to, matters such as: forms, information relating to product and menu specifications, cash control, purchase orders, general operations, labor schedules, personnel, Gross Sales reports, payroll procedures, training and accounting, safety and sanitation, design specifications and color of uniforms, display of signs and notices, authorized and required equipment and fixtures, including specifications therefor, Trademark usage, insurance requirements, lease requirements, décor, standards for management and personnel, hours of operation, yellow page and local advertising formats, standards of maintenance and appearance of the Restaurant.

*Id.*

52.     In addition, GSS agreed that it "shall at [its] sole expense subscribe for and maintain throughout the term hereof one (1) or more telephone numbers" and that in the event of expiration or termination of the Agreement it shall "cause the telephone numbers and all related telephone directory listings to be assigned to [Western Sizzlin], or [Western Sizzlin's] designee, or terminate all such telephone numbers and listings, as required by [GSS] pursuant to 12.3 below." *Id.* § 6.4 and 12.1 (d).

53.     GSS acknowledged:

> that there will be substantial confusion in the mind of the public if, after the expiration or termination of this Agreement, [GSS] continue[s] to use the telephone number listed in the yellow pages and white pages of the phone directory under the name 'WesterN SizzliN'   or any other name confusingly similar thereto. Therefore, [GSS] agrees that within seven (7) days after the expiration or termination of this Agreement for any reason whatsoever, [GSS] shall upon [Western Sizzlin's] request execute all documents necessary or proper in [Western Sizzlin's] judgment to transfer the right to use and control the telephone number(s) pertaining to the Franchised Business to transfer the telephone number(s)listed for the Franchised Business in the then-current yellow pages and white pages of the telephone directory, to [Western Sizzlin] or to such person and at such location as [Western Sizzlin] shall direct. If [GSS] shall not promptly so direct the telephone company, [GSS] hereby irrevocably appoint[s] [Western Sizzlin]  as [GSS'] Attorney-in-fact to do so on [Western Sizzlin's] behalf and in [GSS'] name, and hereby expressly authorize the telephone company to make such transfer and agree to hold the telephone company harmless on account of any such transfer.

*Id.* § 12.3

54.    In the event the Franchise Agreement expired or was "terminated . . . for any reason whatsoever" GSS agreed to "immediately return the Operations Manual to [Western Sizzlin]." *Id.* § 7.3(b). GSS further agreed to "not make, or cause or allow to be made, any copies or reproductions of all or any portion of the Operations Manual without [Western Sizzlin's] express prior consent." *Id.*

55.    GSS also agreed that "neither [GSS'] interest in this Agreement nor any of [GSS'] rights or privileges shall be assigned, transferred, shared or divided, voluntarily or involuntarily, by operation of law or otherwise, in any manner, without the prior written consent of [Western Sizzlin] and subject to [Western Sizzlin's] right of first refusal as provided for in" Section 9.4. *Id.* §§ 9.1, 9.2(a).

56.    If Western Sizzlin agreed to assign GSS' rights in the Franchise Agreement, the assignee was required to meet certain conditions, including but not limited to tendering a $5,000 payment to Western Sizzlin. *Id.* § 9.2(b).

57.    GSS also agreed that, [d]uring the one (1) year period after the expiration or termination hereof, for any reason, neither You, nor any officer, director, shareholder or general partner of a corporate or partnership franchisee, shall, either directly or indirectly, own, operate, advise, be employed by, or have any interest in any business that features the sale of steak and/or features a food bar within an area within ten (10) miles from the Location of any then existing 'WesterN SizzliN' Restaurant, without [Western Sizzlin's] prior written consent." *Id.* § 10.1(b).

58.    GSS also agreed that "[i]n the event of expiration or termination of this Agreement," GSS would at least do the following:

a)    Forthwith discontinue the use of the Trademarks;

b)    Not thereafter operate or do business under any name or in any manner that might tend to give the general public the impression that [GSS is] operating a business as [a Western Sizzlin] franchisee and shall promptly take such action as [Western Sizzlin] may direct to prevent any possible confusion in the mind of the public . . . ;

c)    Cause the telephone numbers and all related telephone directory listing to be assigned to [Western Sizzlin], or [Western Sizzlin's] designee, or terminate all such telephone numbers and listings, as required by [GSS] pursuant to 12.3 below;

d)    Return all unused Proprietary Products . . . ;

e)      Not thereafter use, in any manner, or for any purpose, directly or indirectly, any of [Western Sizzlin] trade secrets, trade dress, recipes, procedures, techniques, or materials acquired by [GSS] by virtue of the relationship established by this Agreement, including, without limiting the generality of the foregoing,

   i.      All manuals, bulletins, instruction sheets, and supplements thereto,

   ii.      All forms, advertising matter, marks, devices, insignia, slogans and designs used from time to time in connection with the Franchised Business,

   iii.      All Product lists, specifications or standards, and

   iv.      All Trademarks or trade names now or hereafter applied for or granted in connection therewith.

*Id.* § 12.1.

59.      If Western Sizzlin "commence any action or proceeding for the purpose of enforcing or preventing the breach of any provision hereof . . ." GSS agreed to reimburse Western Sizzlin "for all costs and expenses incurred in connection therewith, including, but not limited to, reasonable attorneys' fees." *Id.* § 14.14.

60.      On or about December 12, 2003, GSS executed an Addendum to Franchise Agreement, agreeing to extend the term of the Franchise Agreement until December 12, 2023. *See* Ex. D § 1.

61.   GSS agreed to a 2% royalty rate and to pay dues of $250 a month. *Id.* §§ 2-3.

62.   GSS also agreed that the "renewal is subject to the non-compete provisions contained in Paragraph 10.1 of the franchise agreement and that provision applies to the expiration the same as the identified termination of the franchise agreement." *Id.* § 4.

63.   GSS also agreed that if it were to sell the franchise, "the new franchisee will pay royalties of 2% through the date identified in paragraph 1. After that date the royalty will be at the royalty rate being charged new franchisees when the new Franchise Agreement is signed." *Id.* § 5.

64.   Further, GSS agreed "[a]ll other terms of the Franchise Agreement shall remain in full force and effect, unaltered and unchanged by this Addendum." *Id.* § 6.

### D. GSS' Breaches of the Franchise Agreement

65.   On or about November 9, 2023, Western Sizzlin emailed Miller, inquiring if GSS would be renewing the Franchise Agreement.

66.   Neither Miller nor GSS responded.

67.   On or about November 20, 2023, Western Sizzlin emailed Miller again as to whether GSS would be renewing the Franchise Agreement.

68.   Again, neither Miller nor GSS responded.

69.   Upon information and belief, on or about December 1, 2023, GSS attempted to transfer its interest in the Franchise Agreement to D&S.

70.   GSS did not notify Western Sizzlin of this transfer or provide written notice that it did not intend to renew the Franchise Agreement.

71.   GSS did not return either the Operations Manual or any Proprietary Products upon expiration of the Franchise Agreement.

72.   GSS did not cease using the Telephone number of the Dalton location upon expiration of the Franchise Agreement.

73.   Upon information and belief, GSS owns the building in which D&S continues to operate a steak and food bar known as Yellowstone Steak & Buffet ("Yellowstone").

74.   Upon information and belief, D&S is owned and operated by Dion and Sarah Johnston, the latter of whom was an employee of Western Sizzlin and the daughter of Miller.

75.   Upon information and belief, Sarah Johnston was an employee of the Dalton Western Sizzlin location when it was still an authorized franchisee.

76.     At expiration of the Franchise Agreement, GSS failed to transfer the phone number of the Dalton location to either Western Sizzlin or a Western Sizzlin designee.

**E. Defendants' Infringement**

77.     Upon information and belief, on or around December 12, 2023, D&S began removing all Western Sizzlin signage from the Dalton location, replacing them with "Yellowstone Steak & Buffet" signage. *See* Mr. Nomad Ben, NEW YELLOWSTONE STEAK AND BUFFET restaurant replacing Western Sizzlin' in Dalton, Georgia (Dec. 14, 2023), YOUTUBE, https://www.youtube.com/watch?v=F05ioCSA9tE. *See also* Sarah Johnston, FACEBOOK (Dec. 13, 2023), https://www.facebook.com/photo?fbid=10100137652640938&set=a.52470 0085798. *See also* Sarah Johnston, FACEBOOK (Dec. 13, 2023), https://www.facebook.com/photo/?fbid=10100137662571038&set=a.5247 00085798.

78.     Upon information and belief, D&S' Yellowstone is advertising and offering a menu substantially the same as that offered by the original Western Sizzlin.



*Image of Yellowstone Menu taken December 18, 2023.*

 

*Images of interior of Yellowstone taken December 18, 2023.*

79.   Upon information and belief, D&S' Yellowstone advertises and

offers including but not limited to products with the following names:

WRANGLER, WAGON TRAIN, DUDE, HOSS, BIG HOSS, GOLD

NUGGET, MARSHALL, TEX, TEXEESE, TEXEECON, BIG TEX, RANGER,

and PIONEER. *See* Yellowstone Steak & Buffet Menu, MUNCHEM, available at https://www.munchem.com/YELLOWSTONESTEAKBUFFET (last visited Dec. 18, 2023).

80.   Upon information and belief, D&S is also offering other menu items created from Western Sizzlin proprietary recipes, including but not limited to rolls, honey butter, and ranch dressing.



Screencapture of Yellowstone Employee's Facebook Post and Shared to Sarah Johnston's Page. *See* Teresa Ridley Dyer, FACEBOOK (Dec. 15, 2023), https://www.facebook.com/photo?fbid=7835105616517272&set=a.698711 766823395.



Screencapture from Sarah Johnston's Facebook Page. *See also* Sarah Johnston, FACEBOOK (Dec. 13, 2023), https://www.facebook.com/photo?fbid=10100137652640938&set=a.52470 0085798.

81.     Upon information and belief, D&S offerings are derived directly from the Western Sizzlin System.

82.     Upon information and belief, all other structures of the Dalton location have remained the same, including but not limited to, the tall tower façade, metal green tin roof, and awnings on the windows.

83.     Defendants continue to use the Western Sizzlin Marks, trade dress, and Western Sizzlin System in connection with the operation of Yellowstone, to market and promote Yellowstone through the use of Western Sizzlin Marks, trade dress and Western Sizzlin Proprietary Products, and to pass-off Yellowstone and its unapproved products offered by Yellowstone as being authorized by Western Sizzlin when they are not.

84.     Defendants' use of the Western Sizzlin Marks and trade dress is without the license or consent of Western Sizzlin and has caused or is likely to cause mistake, confusion or deception in the minds of the public as to source, affiliation, and sponsorship.

85.     In addition to the fact that Western Sizzlin and Defendants offer identical products at their restaurants, the products provided by Defendants using the Western Sizzlin Marks and trade dress are offered to the same class of consumers as those who patronize authorized Western Sizzlin restaurants. Upon seeing the familiar Western Sizzlin Marks and trade dress through Defendants' unauthorized use thereof, consumers will

be deceived into concluding that Yellowstone, and the products and services offered and sold in connection therewith, are subject to Western Sizzlin's supervision, are sponsored or endorsed by Western Sizzlin and bear the Western Sizzlin Marks and trade dress pursuant to Western Sizzlin's authority and permission.

86.    So long as Defendants continue to use the Western Sizzlin Marks and trade dress in connection with the operation of Yellowstone, consumers have no practical way of knowing that Defendants' former Western Sizzlin restaurant is no longer affiliated with, or sponsored, authorized or endorsed by, Western Sizzlin. As a result, any consumer dissatisfaction with Yellowstone, or with the products and services offered in connection therewith, will be attributed to Western Sizzlin' and the entire Western Sizzlin network.

87.    Indeed, Western Sizzlin has already received a complaint from a customer dated December 15, 2023, in which the customer complained of poor service and referred to Yellowstone as "Western Sizzling [sic]:"

| Date of Visit:: | Dec 15, 2023 |
|---|---|
| How Many in Your Party?: | 1 |
| Additional Comments:: | Service was horrible. Waitress was very rude & even threatening. Manager was also very rude. I was not allowed to take my left-overs (that I'm paying for) with me when I didn't finish eating all of my salad. (One trip to the salad-bar not all you can eat & was dinning in with an entry) I will never go back to this Western Sizzling location and this is not the first time that the waitress were VERY unprofessional & rude. (For the past five years, I have ate at this location at least twice a week. Most of the waitresses are very polite & provide good service, however this one particular waitress is ALWAYS very rude & petty toward me for some reason & on this occasion, the manager was also very rude & unprofessional. This is the first time that I have ever given a bad review for any establishment that I have ever visited. However, todays events while simply trying to enjoy my lunch (THAT I AM PAYING FOR) certainly warrant a bad review. In fact, I have never been treated so poorly from any establishment that I have ever visited. |

88.    Defendants' continued infringement is willful, malicious, fraudulent and deliberate.

89.    Western Sizzlin has at all times complied with and fully performed all its obligations under the Franchise Agreement.

## COUNT I
## Breach of Contract – GSS and Miller

90.    Western Sizzlin repeats and realleges the foregoing paragraphs of its Complaint, as if fully set forth herein.

91.    GSS and Miller have failed and refused to perform their post-termination obligations under the Franchise Agreement, including their obligations (i) to cease using the Western Sizzlin System and the Western Sizzlin Marks and trade dress, (ii) to assign to Western Sizzlin all telephone numbers used in connection with the operation of the former Western Sizzlin Restaurant, (iii) to return all confidential and proprietary information and products to Western Sizzlin, including the Operations

Manual, and (iv) to discontinue all use of any confidential and proprietary information of Western Sizzlin.

92.     In addition, GSS and Miller's continued operation of a steak restaurant and food buffet at the same location as a former franchised Western Sizzlin violates and constitutes a breach of the covenant not to compete set forth in the Franchise Agreement.

93.     Unless ordered by the Court to perform their post-termination obligations under the Franchise Agreement, GSS and Miller will continue to breach their post-termination obligations, including their post-termination covenant not to compete.

94.     Unless GSS and Miller (and those acting in concert with them) are ordered to perform their post-termination obligations under the Franchise Agreement, Western Sizzlin will continue to suffer irreparable injury in its business, including its reputation, resulting in diminished goodwill, customer loss, and damages, along with lack of control and stability of its franchisees, and loss of value of confidential business information for which Western Sizzlin has no adequate remedy at law.

## COUNT II
## Trademark Infringement – D&S

95.     Western Sizzlin repeats and realleges the paragraphs 1-90 of its Complaint, as if fully set forth herein.

96.     D&S' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Western Sizzlin Marks, and D&S' sale, offering for sale, distribution or advertising of goods and services under the Western Sizzlin Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(l).

97.     As a direct and proximate result of D&S' infringement, Western Sizzlin has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

98.     Western Sizzlin has no adequate remedy at law because the Western Sizzlin Marks are unique and represent to the public Western Sizzlin's identity, reputation, and goodwill, such that damages alone cannot fully compensate Western Sizzlin for D&S' misconduct.

99.     Unless enjoined by the Court, D&S will continue to use and infringe the Western Sizzlin Marks, to Western Sizzlin's irreparable injury. This threat of future injury to Western Sizzlin's business identity, goodwill, and reputation requires injunctive relief to prevent D&S' continued use of the Western Sizzlin Marks and to ameliorate and mitigate Western Sizzlin's injury.

## COUNT III
### Federal Trade Dress Infringement – D&S

100.    Western Sizzlin repeats and realleges paragraphs 1-90 of its Complaint, as if fully set forth herein.

101.    D&S' use of trade dress similar to Western Sizzlin's trade dress has caused and is likely to continue to cause confusion, mistake, or deception among the public and to cause them to mistakenly believe that Yellowstone is licensed, sponsored, approved, or otherwise associated with Western Sizzlin.

102.    D&S' conduct constitutes trade dress infringement and false representation that D&S' services and products are sponsored, approved, or authorized by Western Sizzlin, all in violation of the Lanham Act, 15 U.S.C. § 1125(a).

103.   Western Sizzlin has no adequate remedy at law because the Western Sizzlin trade dress is unique and represent to the public Western Sizzlin's identity, reputation, and goodwill, such that damages alone cannot fully compensate Western Sizzlin for D&S' misconduct.

104.   Unless enjoined by the Court, D&S will continue to use and infringe the Western Sizzlin trade dress, to Western Sizzlin's irreparable injury. This threat of future injury to Western Sizzlin's business identity, goodwill, and reputation requires injunctive relief to prevent D&S' continued use of the Western Sizzlin trade dress and to ameliorate and mitigate Western Sizzlin's injury.

## COUNT IV
## Common Law Trade Dress Infringement – D&S

105.   Western Sizzlin repeats and realleges paragraphs 1-90 of its Complaint, as if fully set forth herein.

106.   This is an action for common law trade dress infringement arising under the common law of the State of Georgia.

107.   D&S' above-described conduct constitutes trade dress infringement in violation of the common law of the State of Georgia.

108.   D&S' use of trade dress similar to Western Sizzlin's trade dress has caused and is likely to continue to cause confusion, mistake, or deception among the public and to cause them to mistakenly believe that Yellowstone is licensed, sponsored, approved, or otherwise associated with Western Sizzlin.

109.   D&S' conduct constitutes trade dress infringement and false representation that Yellowstone is sponsored, approved, or authorized by Western Sizzlin.

110.   D&S' acts of infringement, unfair competition, and false designation have caused Western Sizzlin irreparable injury. D&S continues to commit such acts, and unless restrained and enjoined, will continue to do so to Western Sizzlin's irreparable injury. Western Sizzlin's remedy at law is not adequate by itself to compensate it for the injuries inflicted and threatened by D&S.

111.   Because of D&S' conduct, Western Sizzlin has been injured and damaged, and is entitled to recover damages, D&S' profits, and costs.

112.   D&S is using Western Sizzlin's valuable intellectual property with full knowledge of Western Sizzlin's rights, and in bad faith with

willful and deliberate intent to trade on Western Sizzlin's substantial

recognition, reputation, and goodwill.

## COUNT V
## Lanham Act – Unfair Competition – D&S

113.    Western Sizzlin repeats and realleges paragraphs 1-90 of its

Complaint, as if fully set forth herein.

114.    Following the unauthorized removal of Western Sizzlin

signage, D&S has begun operating a competing steak and food bar branded

as Yellowstone Steak & Buffet in the same building, which still bears

Western Sizzlin trade dress.

115.    D&S also uses Western Sizzlin trademarks and trade names in

connection with particular menu items.

116.    D&S' acts, practices, and conduct constitute unfair competition,

false designation of origin, and false or misleading descriptions or

representations of fact, in that it is likely to cause confusion or to cause

mistake, to deceive others as to the affiliation, connection, or association of

the parties, and/or to misrepresent the nature, characteristics, qualities, or

geographic origin of the parties' goods, services and commercial activities,

all in violation of 15 U.S.C § 1125(a).

117.   As a direct and proximate result of D&S' unfair competition, Western Sizzlin has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

118.   Western Sizzlin has no adequate remedy at law because the Western Sizzlin Marks are unique and represent to the public Western Sizzlin's identity, reputation, and goodwill, such that damages alone cannot fully compensate Western Sizzlin for D&S' misconduct.

119.   Unless enjoined by the Court, D&S will continue to compete unfairly with Western Sizzlin, to Western Sizzlin's irreparable injury. This threat of future injury to Western Sizzlin's business identity, goodwill, and reputation requires injunctive relief to prevent D&S' continued unfair competition and to ameliorate and mitigate Western Sizzlin's injury.

## COUNT VI
## Common Law Unfair Competition – D&S

120.   Western Sizzlin repeats and realleges paragraphs 1-90 of its Complaint, as if fully set forth herein.

121.   Defendants' acts, practices, and conduct, including their use of the Western Sizzlin System and the Western Sizzlin Marks and trade dress

in conjunction with the operation of Yellowstone, constitutes unfair competition, false designation of origin, false or misleading descriptions or representations of fact, false advertising, and/or unfair or deceptive trade practices, in that they are and/or were likely to cause confusion or to cause mistake, or to deceive others as to the affiliation, connection, or association of Yellowstone with Western Sizzlin and the Western Sizzlin network, or as to the origin, sponsorship, or approval of Defendants' goods and services, and constitute common law unfair competition.

122.   As a direct and proximate result of Defendants' unfair competition, Western Sizzlin has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

123.   Western Sizzlin has no adequate remedy at law because its Marks, trade dress, and System are unique and represent to the public Western Sizzlin's identity, reputation, and goodwill, such that damages alone cannot fully compensate Western Sizzlin for Defendants' misconduct.

124.   Unless enjoined by the Court, Defendants will continue to compete unfairly with Western Sizzlin, to Western Sizzlin's irreparable injury. This threat of future injury to Western Sizzlin's business identity,

goodwill, and reputation requires injunctive relief to prevent Defendants' continued unfair competition, and to ameliorate and mitigate Western Sizzlin's injury.

**COUNT VII**
**Violation of the Georgia Unfair Competition Statute – All Defendants**

125.   Western Sizzlin repeats and realleges paragraphs 1-90 of its Complaint, as if fully set forth herein.

126.   Defendants' acts, practices, and conduct, including their use of the Western Sizzlin System and the Western Sizzlin Marks and trade dress in conjunction with the operation of Yellowstone, constitutes unfair competition, false designation of origin, false or misleading descriptions or representations of fact, false advertising, and/or unfair or deceptive trade practices, in that they are and/or were likely to cause confusion or to cause mistake, or to deceive others as to the affiliation, connection, or association of Yellowstone with Western Sizzlin and the Western Sizzlin network, or as to the origin, sponsorship, or approval of Defendants' goods and services. Defendants' actions therefore constitute unfair competition in violation of O.C.G.A. § 23-2-55.

127.   As a direct and proximate result of Defendants' unfair competition, Western Sizzlin has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

128.   Western Sizzlin has no adequate remedy at law because its Marks, trade dress, and System are unique and represent to the public Western Sizzlin's identity, reputation, and goodwill, such that damages alone cannot fully compensate Western Sizzlin for Defendants' misconduct.

129.   Unless enjoined by the Court, Defendants will continue to compete unfairly with Western Sizzlin, to Western Sizzlin's irreparable injury. This threat of future injury to Western Sizzlin's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued unfair competition, and to ameliorate and mitigate Western Sizzlin's injury.

## COUNT VIII
## Violation of the Georgia Trade Secrets Act – All Defendants

130.   Western Sizzlin repeats and realleges paragraphs 1-90 of its Complaint, as if fully set forth herein.

131.   GSS has failed to return the Operations Manual or any Proprietary Products to Western Sizzlin upon termination of the Franchise Agreement.

132.   Upon information and belief, GSS has transferred or shared the Operations Manual with D&S, thereby providing D&S with access to proprietary Western Sizzlin information, including recipes.

133.   Upon information and belief, Sarah Johnston, a principal of D&S, and a former employee of Western Sizzlin, is familiar with the proprietary nature of the Western Sizzlin recipes.

134.   D&S is now using Western Sizzlin recipes in connection with its Yellowstone restaurant and advertising to the public that such menu items remain the same despite the change in ownership and branding.

135.   Western Sizzlin's Operatoins Manual, Proprietary Products, and recipes are trade secrets under the Georgia Trade Secrets Act because they're not commonly known, derive commercial value from their secrecy, and are carefully guarded and protected by Western Sizzlin.

136.   Among other protections, Western Sizzlin only allows access to its trade secrets after entering into a franchise agreement.

137.   D&S' use of a substantial portion of Western Sizzlin's protected trade secrets amounts to trade secret misappropriation.

## COUNT IX
## Unjust Enrichment – D&S, Dion Johnston, and Sarah Johnston

138.   Western Sizzlin repeats and realleges paragraphs 1-90 of its Complaint, as if fully set forth herein.

139.   Upon information and belief, D&S receives revenue from its operation of the Yellowstone restaurant.

140.   D&S has not provided any payment to Western Sizzlin in connection with the assignment from GSS to D&S or in connection with D&S' use of Western Sizzlin System, including its trademarks, service marks, and trade dress.

141.   As a result, D&S has been unjustly enriched.

142.   To the extent D&S has made any distributions to its members or if they get paid also as employees of the "Yellowstone" – Dion and Sarah Johnston – they too have been unjustly enriched.

143.   Western Sizzlin has suffered damages and continues to suffer damages as a result.

# PRAYER FOR RELIEF

WHEREFORE, Western Sizzlin respectfully prays for the following relief against Defendants:

A.     A temporary restraining order, preliminary, and permanent injunction enjoining Defendants, their agents, servants and employees, and those in active concert or participation with them, from:

1. Using the Western Sizzlin Marks or any trademark, service mark, logo or trade name that is confusingly similar to the Western Sizzlin Marks;

2. Otherwise infringing the Western Sizzlin Marks or using any similar designation, alone or in combination with any other components;

3. Using the Western Sizzlin trade dress or any trade dress that is confusingly similar to the Western Sizzlin trade dress;

4. Passing off any of their products or services as those of Western Sizzlin or its authorized franchisees;

5. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products or services;

6. Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with Western Sizzlin and its franchisees or any of Western Sizzlin's products or services; and

7. Unfairly competing with Western Sizzlin or its franchisees in any manner;

B.     An Order directing GSS, Miller, and the remaining Defendants

acting in concert with them immediately to perform their post-termination

obligations under the Franchise Agreement, including, without limitation,

their obligations:

1.   To take any and all necessary steps to assign to Western Sizzlin
     any telephone numbers used in connection with the operation
     of the former Western Sizzlin Dalton location;

2.   To return to Western Sizzlin, at Defendants' cost, all Operating
     Manuals and other materials provided to Defendants in
     connection with the operation of the former Western Sizzlin
     Dalton location, all Proprietary Products, and all materials
     bearing any of the Western Sizzlin Marks.

C.     An order preliminarily and permanently enjoining Miller, GSS,

and those acting in concert with them, for a period of two years beginning

on the date on which those parties begin to comply with the restrictive

covenant, from having, directly or indirectly, any direct or indirect interest

as a disclosed or beneficial owner, investor, partner, director, officer,

employee, consultant, representative, or agent in any competitive business

operating at the site of the prior Western Sizzlin in Dalton, Georgia or

within 10 miles of that site;

D.     An order under 15 U.S.C. § 1118 that all labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, and advertisements in the possession of Defendants, their respective affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation with them, bearing the Western Sizzlin Marks or trade dress be delivered to Western Sizzlin at Defendants' cost;

E.     That Defendants be required promptly to eliminate their advertising under the Western Sizzlin Marks or trade dress or any other confusingly similar designations from all media, including, but not limited to, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings and mass mailings, all at Defendants' cost;

F.     That Defendants be required to file with the Court and to serve upon Western Sizzlin's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

G.     That Defendants account and pay over to Western Sizzlin all gains, profits and advantages derived by them as a result of their

infringement of the Western Sizzlin's Marks and trade dress, breach of contract and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law;

H.     That GSS account and pay over to Western Sizzlin all consideration received in exchange for GSS transfer of its Franchise Agreement to D&S;

I.     That D&S account and pay over to Western Sizzlin all profits it has made from the Yellowstone restaurant since December 13, 2023.

J.     That Miller, Dion Johnston, and Sarah Johnston each account and pay over to Western Sizzlin all distributions made to them from GSS and D&S;

K.     That Defendants pay to Western Sizzlin such damages as Western Sizzlin has sustained by reason of said trademark infringement, trade dress infringement, breach of contract unfair competition, unjust enrichment, and breach of the Georgia Trade Secrets Act; and that, because of the willful nature of said infringement, the Court enter judgment for Western Sizzlin for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

L.      An award of the costs and expenses, including reasonable

attorneys' fees, incurred by Western Sizzlin in connection with this action

as provided for by statute and the parties' Franchise Agreement;

M.      Such other and further relief as the Court deems just and

proper.

Respectfully submitted, this 19th day of December 2023.

/s/   *Kana A. Caplan*
Kana A. Caplan
Georgia Bar No. 621805
Krevolin & Horst LLC
One Atlantic Center
1201 West Peachtree St., NW, Suite 3250
Atlanta, GA 30309
(404) 835-8054 – phone
caplan@khlawfirm.com

Manny Herceg (*Pro Hac Vice forthcoming*)
Gregory B. Coy (*Pro Hac Vice forthcoming*)
Joshua F. Brown, (*Pro Hac Vice forthcoming*)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204-2023
(317) 713-3500 – phone
gcoy@taftlaw.com
jbrown@taftlaw.com
mherceg@taftlaw.com

Rachel Smoot (*Pro Hac Vice forthcoming*)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
(614) 221-2838 – phone
rsmoot@taftlaw.com

*Counsel for Western Sizzlin*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1 (D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Book Antiqua and a point size of 14.

<u>/s/ Kana A. Caplan</u><br>Kana A. Caplan

## VERIFICATION

Under 28 U.S.C. § 1746, I, Robyn Mabe, declare, on behalf of myself and Western Sizzlin Corporation under penalty of perjury that I have read the foregoing Verified Complaint and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Robyn Mabe
Vice President and CEO
Western Sizzlin Corporation

Date:_____12 / 19 / 23_____